I'm Paul Eaglin from Fairbanks. On behalf of William Scott Brinegar, thank you very much for hearing my client's case. I'd like to first point out in the very beginning of my brief the argument section. I mentioned that this case arose from the District of Alaska and that it went to judgment in the District of Alaska. It did not, of course. It's from Montana. I was just so used to writing Alaska, so I apologize for that error in my brief. And then before going into the main part of my argument, I'd like to just update on the related cases statement at the very end. I mentioned a Garland case. I'm not up to date on where that stands. The Sam case has been brought up to date by the supplemental authority statement from the government, and that is it went to decision last fall and it's now been noted for supplemental authority in this case. The Horn case, which is the last one that I mentioned there, will be argued next month in Anchorage. In the argument itself, on behalf of Mr. Brinegar, I'm advocating three related arguments interconnected genuinely. And that is, if you look at the what I argued as the critical issue question. I'm curious. He has a hundred percent disability rating from the Veterans Administration. Correct. And so can he take those same disabilities and then go to Social Security and obtain a ruling there that is going to give him some additional money? I mean, I've never ever run across this before. But someone gets a hundred percent disability from the V.A. and. And. Well, I've worked so many quarters and I've got these problems. As I recall, many of these problems were problems on which his V.A. benefits were based. Right. They are for the V.A. Is your question. Can you draw both, Judge? Yeah. Oh, yes. Well, under the V.A. system, there's compensation in one form. There's pension. Speaking generally, where somebody is drawing pension, there may be a reduction in the benefits. There's an offset at work because pension, somewhat like SSI, Supplemental Security Income in Social Security speak, are finance related, related to one's income and resources. So they can take that into account. So there may be some offset there. However, where I have clients who are insured. You're talking about pension for non-service connected disability. Correct. I mean, if you're a veteran and you can't work, you reach a hundred percent, whether it's service connected or not, you'll get a hundred percent disability, something like $2,400 a month. Right. Yes. You're not talking about that. Right. Because I was going to compensation, which is that if somebody is entitled there, which is service connected, and they're also entitled under Title II based on their work record in Social Security, then they may draw both because those programs do not take into account one's income and resources and reducing an entitlement under one or both. I have some clients who might draw both of them because they're entitled. And the findings of one agency really are not necessarily observed by the other agency. Right. With respect to the medical disability finding. Whereas I understood Judge Ferguson's question to go to whether one is entitled financially, having been found disabled under the criteria of both of the programs. I'm just curious because I have a rather high disability rating for service connected. He's asking for advice. I just want to know if I've got anything coming in the future. He's asking for advice from you. Well, and I never know. And I gave it and I do have some clients on occasion. It doesn't happen that often that somebody who has who's fully insured for Title II purposes and they have compensation under VA, not the pension, which is the one that's that's income related, like as similar to SSI and they can draw both. Yeah. And here the related arguments are that have to do with the fact that as you notice from the brief, if I was attacking the opinion or the ruling directly, the unfavorable decision at page excerpt 10, which is the same as excerpt 74 in the main volume, where you have an ALJ or an agency decision, final agency decision that simply says no credit is going to be given to the treating physicians under the Ryan case, the Owen case and so forth. We argue that that is simply incorrect, that while the agency decision may not be impressed sufficiently with it, they should go through the analysis such as what's the treating relationship? How long has what's the longitudinal record between the patient and the doctor? What's the what's the specialty of the doctor? Here we see right after the rejection of Dr. Bishard's opinion, there a conflict or an ambiguity leaps off the page because he's rejecting Dr. Bishard's early, early 2006 evaluation that's over at excerpt four, four, 13 to 416, I believe it is. But then one of the first points of contradiction that the agency decision points to to say that this was inconsistent with Mr. Brinegar's record is it goes and cites a November 2003 C&P exam or compensation and pension examination from the Veterans Administration. This is just one example of the type of rather obvious contradiction that leaps off of the page of the final agency decision. How can one really say that an early January 2006 evaluation by a treating physician is contradicted by a November 2003 C&P examination in which the judge cited statements made by Mr. Brinegar with respect to what he can do, what he cannot do? They're not necessarily in conflict. They reflect evaluations at different times. So why not ask the treating physician? That's part of our second argument with respect to this duty to recontact the treating physician. Why not do that? It's a simple task to be taken. And then to quickly try to slide into with a few minutes that I have left, the argument having to do with the use of an M.E. besides contact, recontacting the treating physician with respect to ambiguities or inconsistencies that leap off the page, a judge could or administrative law judge could also have an M.E. at the hearing or consult with an M.E. I do not agree that the SAM decision of last fall controls this. The SAM decision, the circumstances were quite different. Mr. SAM, for the relevant time period at issue, had next to no medical records. What happened in SAM is he had a number of medical records later on, once he was able to get care, and based on the medical documentation from years past his date last insured, his advocate at the hearing, who is not me, I argued his circuit court argument last year. The argument was suggesting to the agency to infer from all of these records post-date last insured that he might have been disabled during the period for which he was insured. That's different here. We have lots of documentation of care. We have a significant longitudinal record of care here. I think those cases are quite different. I would like to save one minute for rebuttal if I could. Thank you. Thank you very well. Good morning. May it please the Court. My name is Sandra Kreider. I'm here today on behalf of the appellee, the Commissioner of Social Security. I guess I'll start by addressing the question from the bench regarding the VA disability rating. I want to clarify the point that a VA disability rating is not binding on the Social Security Administration. Could you speak just a little louder? Sure. I just want to clarify the point that a VA disability rating is not binding on the Social Security Administration. Authority for that can be found at 20 CFR 404-1504. The ALJ in this case did consider the VA disability rating, and at page 8 of his decision gave reasons why he was rejecting that rating. So the mere fact that a plaintiff had a 100% VA disability rating does not warrant a finding of disability under the Social Security regulations. With respect to the ALJ's evaluation of Dr. Bichard, plaintiff seems to be taking the position that the treating physician's opinion is, an ALJ just cannot say they're not rejecting a treating physician's position. This is inconsistent with the law. Lingenfelder and Orn don't hold this. What they basically say is when an ALJ, even if they're not going to give a treating physician controlling weight, they need to weigh it in accordance with 404-1527 of our regulations. And cannot reject that opinion unless they provide specific and legitimate reasons for doing so. Orn says that specifically, which indicates an ALJ can, in fact, wholly reject a treating physician's opinion. In this case, the ALJ went through a detailed analysis of Dr. Bichard's opinion and gave numerous reasons why he was rejecting that opinion. One of these, which has been recognized by this Court as a specific and legitimate reason for rejecting a treating physician's opinion, is that it was based on the plaintiff's discredited subjective complaints. The opinion at issue here, and it's important to keep this in mind, is Dr. Bichard's Irritable Bowel Syndrome Residual Functional Capacity Assessment, which he completed in January of 2006. When you look through the medical records in this case, there's no indication that Dr. Bichard was ever treating plaintiff for Irritable Bowel Syndrome. There's one mention early, I think in his initial appointment with plaintiff, that he had intermittent urinary incontinence problems. The plaintiff reported this, but also said this was not necessarily occurring with any frequency. There's no indication in the record anywhere that Dr. Bichard was treating plaintiff for any kind of bowel incontinence. The ALJ also noted that Dr. Bichard's opinion was not consistent with his own treatment notes. For example, he says that plaintiff's medications cause drowsiness. There's no indication in Dr. Bichard's records that plaintiff ever reported that kind of symptom to him. It also talks about plaintiff's depression and anxiety, and say that these prevent even low-stress work. However, if you look through Dr. Bichard's medical records over and over again, plaintiff is reporting that these conditions are controlled on medications, and, in fact, that he did not have those types of problems. Plaintiff at the administrative hearing in this case, in fact, stated he wasn't even seeking mental disability in this case. So when push comes to shove, the ALJ discounted Dr. Bichard's opinion and gave reasons for doing so. Basically, with respect to plaintiff's contentions concerning the development of the record, there was no duty of the ALJ to do anything to contact Dr. Bichard in this case. The record was not ambiguous. Dr. Bichard's opinion was clear. The ALJ found it contradicted not only by Dr. Bichard's opinions, but by plaintiff's medical record as a whole. There wasn't an ambiguity for the ALJ to resolve. The ALJ did not find the record inadequate to evaluate the opinion, and therefore had no real reason to recontact him. With respect to plaintiff's arguments concerning the Social Security ruling 8320, which he is contending, also was a reason the ALJ needed to either get a medical expert or recontact Dr. Bichard. This ruling has been defined by this Court in its recent decision in the Sam case. And in Sam, this Court stated at page 810 that because the ALJ found that Sam was not disabled at any time through the date of the decision, the question of when he became disabled did not arise, and the procedures prescribed in SSR 8320 did not apply. That's exactly the situation in this case. The ALJ found that plaintiff was not disabled at any time through the date of the decision. So there is no disability onset date question, and there is no application of SSR 8320. Is there any questions? I'm just, you know, curious. Let's say you have a veteran who lost a leg, and that veteran gets 100 percent service-connected disability. And then the veteran finds a job and works at it for 20 years, but the condition of his stump becomes very sensitive. Maybe he's gained a little weight, whatever. He finds he just can't work anymore, can't use what he has left to walk around in. And can he then go to this veteran and go to the Social Security and claim Social Security benefits? He could come back and claim or apply for Social Security benefits, which would then be evaluated under the five-step sequential evaluation process. It's not a guarantee that he would have disability, and I would think that I didn't ask about the guarantee. Right. But he absolutely could apply for Social Security under those circumstances. The ALJ might and would have the right to consider his previous work history, but he would also have to consider the documented medical evidence of the change in his condition when evaluating the claim. Here, we don't really have any documented evidence of a change of a condition. I'm not asking. Okay. I'm not asking the general question. All right. Are there any further questions? Thank the Court for its time. All right. Thank you. I would just like to mention this again to get back to the Sam case. The remarkable difference between the Gary Sam case is that for the years at issue there, the years during which he was insured, and for a number of years after he was no longer insured, there were no records relating to Mr. Sam's disabilities. And what had happened in that case is years later, a number of documents were generated because he was able to get care or did go to get care. Because the nature of the diagnosis then had to do with a progressive disease, similar to this one here with respect to the spine, degenerative disc disease, the argument was made unsuccessfully that under 8320, a medical expert should be used to try to infer to what extent, if at all, this disability preexisted his date last insured. But we have here something different. So I think it's not accurate to relate or to try to relate the Sam ruling, because we have here an extensive longitudinal record under the VA, for example, if nothing else, that he was for years and years disabled. We have a substantial record of disability here, unlike Sam. Thank you very much. Well, what specifically disabilities do you have in mind? We're not covered by the VA. I mean, he keeps saying that he doesn't have mental problems and he brushes those aside. He was relying on the same disabilities that you see relied on by Mr. Brinegar under the VA are the ones that he used here, saying, arguing, that he had progressed to the point where he was no longer able to. Identical ones. They are. And his argument, in essence, is he's already argued successfully to the VA. I've met your disability standard. We know that. That's in the record. What he's now saying to the Social Security Administration is, I meet your disability criteria, too, based on these same infirmities, these same disabilities, in terms of the inability to engage in substantial gainful activity as the Social Security Administration means that term. A similar term, as you may well know, is used under the VA, but it has a slightly different meaning. So he's saying here that he now meets the Social Security Administration definition of SGA. Thank you. All right. Thank you. Mr. Monroe also stands to notice. And the Court for this session will adjourn.
judges: Pregerson, Rymer, Tashima